OPINION
{¶ 1} Appellant, Charles Hall, III, appeals from the February 2, 2005 judgment entry of the Ashtabula County Court, Western District, in which he was sentenced for domestic violence and child endangering.
 {¶ 2} On July 7, 2004, Deputy Michael Roach ("Deputy Roach"), of the Ashtabula County Sheriff's Department, filed a complaint against appellant on one count of domestic violence, a misdemeanor of the first degree, in violation of R.C. 2919.25(A), and one count of child endangering, a misdemeanor of the first degree, in violation of R.C. 2919.22(A). The complaint alleged that appellant knowingly caused or attempted to cause physical harm to his live-in girlfriend, Tina L. Dingess ("Dingess"), while she was holding their child, and that he created a substantial risk to the health or safety of the child. Appellant pleaded not guilty at his arraignment on August 16, 2004.
 {¶ 3} A bench trial commenced on December 11, 2004. At the close of appellee's case, appellant's counsel moved for an acquittal pursuant to Crim.R. 29, which was overruled by the trial court. At the close of appellant's case, appellant's counsel renewed the Crim.R. 29 motion which was again overruled by the trial court.
 {¶ 4} At the trial, Dingess testified for appellee that she and appellant lived together at his father's house.[1] The couple cohabitated for approximately ten months and had a son who was about five months old at the time of the incident. According to Dingess, on July 3, 2004, she and appellant as well as appellant's father, Valerie Dixon ("Dixon"), Alan, and Alan's mother, Debbie, were all at the house, located at 4530 North Ridge East, Geneva, Ohio.[2] Prior to their arrival, the house guests had been in an altercation and wanted to call the police on one another. Dingess suggested that she and appellant leave and expressed a concern for their baby. She indicated that appellant became very irate over her suggestion and everyone left the house except Dixon.
 {¶ 5} Dingess stated that while she was holding the baby, appellant began to hit her. She testified that appellant hit her several times, punched her in the head, and twisted her arm behind her back so hard that she thought it was going to break. Dingess received a bruise on her arm, which was shaped like a complete hand print, and said that her arm was extremely sore for a couple weeks. She also had bruises on her knees, due to the fact that when appellant was twisting her arm, she went down on both knees while she was holding the baby. While she was down, Dingess indicated that appellant pushed on her leg as well as stepped on her foot, causing visible injury. Dingess then proceeded outside and told appellant to "just stop." Appellant walked away for a few minutes and Dingess remained outside trying to calm herself. Dingess went back inside and indicated that appellant began arguing with her as well as hitting her again. Dixon helped Dingess pack her vehicle with various items for the baby and Dingess left.
 {¶ 6} On cross-examination, Dingess testified that she went to the Geneva Police Department ("GPD"), where her injuries were photographed, but never sought medical treatment. She stated that it was her conscious decision to hold onto the baby during the encounter. Dingess said that appellant never hit the baby nor did the baby require medical treatment. On redirect examination, Dingess testified that she did not go to the hospital because she did not have the money to pay for medical bills. She maintained that she was holding the baby before the argument and hitting began.
 {¶ 7} Deputy Roach testified for appellee that he met Dingess on July 3, 2004, at the GPD regarding a domestic violence complaint. Dingess gave Deputy Roach a written statement of the incident and he photographed her injuries. Deputy Roach indicated that Dingess had visible injuries to her face, arm, and legs.
 {¶ 8} According to appellant, Dingess picked up the baby after they started arguing. He stated that he put his hand on Dingess and pushed her, but did not try to knock her down. Rather, appellant maintained that he wanted to "guide" her out of his way. Appellant said that he did not hit, kick, strike, or put any marks on Dingess. On cross-examination, appellant stressed that he did not "guide" Dingess, but instead put his hand on the side of her shoulder and walked around her. He was not sure whether he stepped on Dingess's foot.
 {¶ 9} Pursuant to its February 2, 2005 judgment entry, the trial court found appellant guilty on both counts and sentenced him to serve consecutive thirty-day jail terms, for a total of sixty days. It is from that judgment that appellant filed a timely notice of appeal and makes the following assignments of error:
 {¶ 10} "[1.] Appellant's conviction of child endangering in violation of [R.C.] 2919.22(A) is neither supported by sufficient evidence nor is it supported by the manifest weight of the evidence.
 {¶ 11} "[2.] Appellant's conviction of domestic violence in violation of [R.C.] 2919.25 is neither supported by sufficient evidence nor is it supported by the manifest weight of the evidence."
 {¶ 12} In his first assignment of error, appellant argues that his conviction of child endangering in violation of R.C.2919.22(A) is not supported by the sufficiency and manifest weight of the evidence.
 {¶ 13} As this court stated in State v. Schlee (Dec. 23, 1994), 11th Dist. No. 93-L0-82, 1994 Ohio App. LEXIS 5862, at 13-14:
 {¶ 14} "`Sufficiency' challenges whether the prosecution has presented evidence on each element of the offense to allow the matter to go to the [trier of fact], while `manifest weight' contests the believability of the evidence presented.
 {¶ 15} "`"(* * *)The test (for sufficiency of the evidence) is whether after viewing the probative evidence and the inference[s] drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all of the elements of the offense beyond a reasonable doubt. The claimof insufficient evidence invokes an inquiry about due process. Itraises a question of law, the resolution of which does not allowthe court to weigh the evidence. * * *'"
 {¶ 16} "In other words, the standard to be applied on a question concerning sufficiency is: when viewing the evidence `in a light most favorable to the prosecution,' * * * `(a) reviewing court (should) not reverse a * * * verdict where there is substantial evidence upon which the [trier of fact] could reasonably conclude that all of the elements of an offense have been proven beyond a reasonable doubt.' * * *" (Emphasis sic.) (Citations omitted.)
 {¶ 17} "[A] reviewing court must look to the evidence presented * * * to assess whether the state offered evidence on each statutory element of the offense, so that a rational trier of fact may infer that the offense was committed beyond a reasonable doubt." State v. March (July 16, 1999), 11th Dist. No. 98-L-065, 1999 Ohio App. LEXIS 3333, at 8. The evidence is to be viewed in a light most favorable to the prosecution when conducting this inquiry. State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus. Further, the verdict will not be disturbed on appeal unless the reviewing court finds that reasonable minds could not have arrived at the conclusion reached by the trier of fact. State v. Dennis (1997),79 Ohio St.3d 421, 430.
 {¶ 18} In Schlee, supra, at 14-15, we also stated that:
 {¶ 19} "`[M]anifest weight' requires a review of the weight of the evidence presented, not whether the state has offered sufficient evidence on each element of the offense.
 {¶ 20} "`In determining whether the verdict was against the manifest weight of the evidence, "(* * *) the court reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. (* * *)'" (Citations omitted.) * * *" (Emphasis sic.)
 {¶ 21} A judgment of a trial court should be reversed as being against the manifest weight of the evidence "`only in the exceptional case in which the evidence weighs heavily against the conviction.'" State v. Thompkins (1997), 78 Ohio St.3d 380,387.
 {¶ 22} R.C. 2919.22(A) provides in part: "[n]o person, who is the parent, guardian, custodian, person having custody or control, or person in loco parentis of a child under eighteen years of age or a mentally or physically handicapped child under twenty-one years of age, shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support. * * *"
 {¶ 23} In the case at bar, with respect to sufficiency, appellee presented ample evidence that appellant created a substantial risk to the health or safety of the minor child. R.C.2919.22(A). Again, Dingess testified at trial that she was holding their five-month old baby when appellant hit her several times, punched her in the head, twisted her arm, and stepped on her foot. Dingess's physical injuries were visibly noticeable to Deputy Roach, who memorialized them in photographs. Clearly, the foregoing supports appellee's position that appellant created a substantial risk to the health or safety of the minor child by violating a duty of care, protection, or support.
 {¶ 24} Appellant alleges that he did not harm the child and that Dingess used the baby as a "shield." We note, however, that pursuant to the sufficiency of the evidence, appellee was not required to show actual harm to the child under R.C. 2919.22(A). Based on Schlee, supra, there is substantial evidence upon which the trier of fact could reasonably conclude beyond a reasonable doubt that the elements of child endangering have been proven.
 {¶ 25} Regarding manifest weight, the trier of fact chose to believe Dingess's testimony that she was holding the baby before the encounter, rather than appellant's testimony that Dingess picked up the minor child after the argument ensued. Based onSchlee and Thompkins, supra, the trier of fact did not clearly lose its way in convicting appellant of child endangering.
 {¶ 26} Appellant's first assignment of error is without merit.
 {¶ 27} In his second assignment of error, appellant alleges that his conviction of domestic violence in violation of R.C.2919.25 is not supported by the sufficiency and manifest weight of the evidence.
 {¶ 28} R.C. 2919.25(A) states: "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member."
 {¶ 29} R.C. 2901.01(A)(3) provides: "`[p]hysical harm to persons' means any injury, illness, or other physiological impairment, regardless of its gravity or duration."
 {¶ 30} In the instant matter, regarding the sufficiency of the evidence, it is clear that Dingess was appellant's live-in girlfriend and the minor child was their son. Also, appellee satisfied the physical harm element of R.C. 2919.25(A), which, pursuant to R.C. 2901.01(A)(3) is defined as any injuryregardless of its gravity or duration. Again, the testimony of Dingess and Deputy Roach, as well as the photographs of Dingess's physical injuries, establish that appellant's conviction for domestic violence was supported by sufficient evidence. Based onSchlee, supra, there is substantial evidence upon which the trier of fact could reasonably conclude beyond a reasonable doubt that the elements of domestic violence have been proven.
 {¶ 31} With respect to manifest weight, the trier of fact chose to believe appellee's witnesses over appellant's testimony. Based on Schlee and Thompkins, supra, the trier of fact did not clearly lose its way in convicting appellant of domestic violence.
 {¶ 32} Appellant's second assignment of error is without merit.
 {¶ 33} For the foregoing reasons, appellant's assignments of error are not well-taken. The judgment of the Ashtabula County Court, Western District, is affirmed.
O'Neill, J., Grendell, j., concur.
[1] Dingess did not provide the name of appellant's father.
[2] Dingess did not know the surname of Alan and Debbie.